UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

ALZHEIMER'S FOUNDATION OF AMERICA, INC.,
d/b/a ALZHEIMER'S FOUNDATION,

                 Plaintiff,

-against-

ALZHEIMER'S DISEASE AND RELATED DISORDERS
ASOCIATION, INC., d/b/a ALZHEIMER'S
ASSOCIATION and NORTHERN TRUST BANK,

                 Defendants.

------------------------------------------------X

10 Civ. 3314
10 Civ. 5013

OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED

5/25/11

A P P E A R A N C E S:

        Attorney for Plaintiff

        FENSTERSTOCK & PARTNERS LLP
        30 Wall Street, 9th Floor
        New York, NY 10005
        By:  Blair C. Fensterstock, Esq.
             Eugene D. Kublanovsky, Esq.
             Brooke K. Haley, Esq.

        INGBER & GELBER, LLP
        181 Millburn Avenue, Suite 202
        Millburn, New Jersey 07041
        By:  Mark J. Ingber, Esq.

        Attorney for Defendants

        McDERMOTT WILL & EMERY LLC
        340 Madison Avenue
        New York, NY  10172
        By:  Joseph R. Robinson, Esq.
             Motty Shulman, Esq.
             Jack Wilson, Esq.

**Sweet, D.J.**

These two actions have presented dueling motions to dismiss pursuant to Rule 12(b)(6).  In the first filed action, 10 Civ. 3314, the defendants Alzheimer's Disease and Related Disorders Association (the "Association") and Northern Trust (the "Trust") have moved to dismiss the Amended Complaint of the Alzheimer's Foundation of Americas, Inc. (the "Foundation").  In the second filed action, 10 Civ. 5013, the Foundation has moved to dismiss the Association's complaint.

These two actions present the competing contentions of the Foundation and Association, both of which seek to alleviate the ravages of Alzheimer's.  Efforts to resolve this dispute were unavailing despite the obvious desirability of such an outcome since both the Foundation and the Association purport to be serving the public interest.  As set forth below, the motions to dismiss are granted in part and denied in part.

**Prior Proceedings**

**10 Civ. 3314**

1

The Foundation filed its complaint against the
Association and the Trust on April 20, 2010.  The Foundation's
Amended Complaint ("FAC") was filed on July 7, 2010.

The FAC has eight counts alleging
misrepresentation/false designation/unfair competition under the
Lanham Act (Count I); trademark dilution and unlawful deceptive
acts and practices under New York General Business Law (Counts
II, III); unfair competition, unjust enrichment, conspiracy and
conversion, and tortious interference with prospective business
advantage under New York common law (Counts IV, V, VII, VIII);
and payments on instruments with unauthorized signatures under
New York CLS U.C.C. § 3-404 (Count VI).

The FAC alleges the improper depositing of checks by
the Association when the Association accepted and deposited a
check for funds from the Harbaugh Trust and three other checks,
and thereby held "itself out to the world as the rightful owner
of the Foundation's Marks" and implied "to the marketplace that
the Association and the Foundation are one and the same" which
"resulted in a likelihood of confusion in commerce, whereby
numerous ordinary prudent donors have been, and are likely to
be, misled into believing that the Association and the
Foundation are the same organization."  (FAC ¶¶ 59-61.)

2

The first check about which Plaintiff complains is the
one for the bequest from the Harbaugh Trust which was the
subject of a 2007 Virginia state court action.  (FAC ¶¶ 31-48.)

The other three checks pleaded are described in the
FAC as follows:

> Three examples of cancelled checks which were made
> payable to the Foundation and sent to and deposited by
> [the Association], are:
>
> (1)  A check from Alana Greebel, dated April 19, 2010,
> in the amount of $20.00;
>
> (2)  A check from David Felmly and H. Kristen
> Leesment, dated April 19, 2010, in the amount of
> $10.00; and
>
> (3)  A check from Sandra G. Horan and Thomas G. Horan,
> dated March 25, 2010, in the amount of $5.00.

(FAC ¶ 53.)

In count I, the FAC alleges that by accepting and
depositing the checks intentionally mailed to the Association by
the Foundation's employees and their relatives, and by holding
itself out to the world as the owner of the Foundation's Marks,
the Association has made misrepresentations and has caused a
likelihood of confusion of "ordinary prudent donors" in commerce

3

under Lanham act, Section 43(a), 15 U.S.C. § 1125(a). (FAC ¶ 61.)

Count II for dilution under New York state law alleges that the Association has diluted or blurred the distinctiveness of the Foundation's Marks, most notably by endorsing the aforementioned checks.

Count III alleges unlawful deceptive acts and practices under New York state law based upon a likelihood of or actual confusion in that "[t]he Association's acceptance and conversion of charitable donations made payable to the Foundation, and Northern Trust's acceptance of said charitable donations checks for deposit, is likely to cause and is causing confusion, mistake, and deception among the general public." (FAC ¶ 71.)

Count IV of the FAC alleges common law unfair competition by the "bad faith usage of the Foundation's Marks and goodwill, and the conversion of the Foundation's property," i.e., the checks. (FAC ¶ 71.)

Count V alleges unjust enrichment and Count VIII alleges tortuous interference based upon the allegation that the

Association "wrongfully used the Foundation's Marks, reputation, and goodwill" and upon allegations of conversion.  (FAC ¶ 101.)

Plaintiff's Count VI alleges a U.C.C. claim for payment on an instrument with an unauthorized signature.

Count VII alleges conversion or conspiracy in that "defendants have exercised unlawful dominion over the funds intended to be donated to the Foundation."  (FAC ¶ 94.)

**10 Civ. 5013**

The Association filed its complaint on June 28, 2010 and its Amended Complaint ("AAC") on July 30, 3010 naming the Foundation and Eric J. Hall ("Hall"), Alana Greebel ("Greebel"), David Felmly ("Felmly"), H. Kristen Leesment ("Leesment"), Sandra Horan ("S. Horan") and Thomas Horan ("T. Horan") as individual defendants.  The AAC alleges 16 claims, (1) trademark infringement pursuant to Lanham Act Section 32, 15 U.S.C. § 1114(1)(a); (2) trademark infringement pursuant to Lanham Act Section 32, 15 U.S.C. § 1114(1)(b); (3) libel; (4) injurious falsehood/trade libel; (5) false designation, false description and false representation of fact pursuant to Lanham Act Section 43(a), 15 U.S.C. § 1125(a)(1)(A); (6 & 7) false designation,

false description and false representation of fact pursuant to
Lanham Act Section 43(a), 15 U.S.C. § 1125(a)(1)(B); (8)
dilution pursuant to Lanham Act Section 43(c), 15 U.S.C. §
1125(c); (9) fraud; (10) tortious interference with prospective
economic advantage; (11) injury to business reputation pursuant
to N.Y. Gen. Bus. Law § 360-1; (12) dilution pursuant to N.Y.
Gen. Bus. Law § 360-1; (13) unfair competition; (14) unjust
enrichment; (15) deceptive acts and practices pursuant to N.Y.
Gen. Bus. Law § 349; and (16) conspiracy.

The motions by the Association and the Foundation to
dismiss the FAC and the AAC were heard on October 13, 2010.

**The Relevant Standard**

On a motion to dismiss pursuant to Rule 12, all
factual allegations in the complaint are accepted as true, and
all inferences are drawn in favor of the pleader. Mills v.
Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). To
survive a motion to dismiss pursuant to Rule 12(b)(6), "a
complaint must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its
face.'" Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1949
(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007)). Plaintiffs must allege sufficient facts to "nudge[]
their claims across the line from conceivable to plausible."
Twombly, 550 U.S. at 570. Though the court must accept the
factual allegations of a complaint as true, it is "not bound to
accept as true a legal conclusion couched as a factual
allegation." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550
U.S. at 555).

**The Motions To Dismiss The Lanham Act,**
**Dilution And Unfair Competition Claims Are Denied**

The Lanham Act "serves to protect the holders of
trademarks from the promotion and sale of competing products
likely to confuse consumers as to their source." Philip Morris
USA Inc. v. U.S. Sun Star Trading, Inc., 2010 WL 2133937, at *4
(E.D.N.Y. Mar. 11, 2010) report and recommendation adopted, 2010
WL 2160058 (E.D.N.Y. May 27, 2010) (internal quotation marks and
citations omitted).  Lanham Act § 43(a), 15 U.S.C. § 1125(a),
prohibits a person from using "any word, term, name, symbol, or
device, or any combination thereof . . . which is likely to
cause confusion . . . as to the origin, sponsorship or approval
of his or her goods . . . ."  In order to prevail under 15
U.S.C. § 1125(a), a plaintiff must show that it owns a mark
deserving of protection, and that the mark is used in such a way

7

as to create a "likelihood of confusion" as to the source or sponsorship of the defendant's goods or services. <u>Louis Vuitton Malletier v. Dooney & Bourke, Inc.</u>, 454 F.3d 108, 115 (2d Cir. 2006).

The elements of a cause of action of unfair competition under New York common law mirror the requirements of claims stated under the Lanham Act and similarly require that a party demonstrate a valid, protectable mark and a likelihood of confusion between the marks of the alleged infringer and the charging party. <u>See</u> <u>ESPN, Inc. v. Quicksilver, Inc.</u>, 586 F. Supp. 2d 219 (S.D.N.Y. 2008). In addition, a common law claim for unfair competition requires that the plaintiff show actual confusion in an action for damages or a likelihood of confusion in an action for equitable relief. <u>Id.</u>

Non-profit and public service organizations are entitled to the use and protection of their trademarks. <u>See</u> <u>United We Stand Am., Inc. v. United We Stand, Am. New York, Inc.</u>, 128 F.3d 86, 89-90 (2d Cir. 1997) ("The right to enjoin infringement of a trade or service mark 'is as available to public service organizations as to merchants and manufacturers.'")(quoting <u>N.A.A.C.P. v. N.A.A.C.P. Legal Defense and Educ. Fund</u>, 559 F.Supp. 1337, 1342 (D.D.C. 1983) (subsequent

history omitted)); see also Planned Parenthood Fed'n of Am.,
Inc. v. Bucci, No. 97 Civ. 0629, 1997 WL 133313, at *6 (S.D.N.Y.
Mar. 24, 1997) ("fund-raising activities may bring a defendant's
actions within the scope of the Lanham Act").  The exploitation
of another charity's name is an actionable basis for claiming
violations of trademark law.  See, e.g., Cancer Research Inst.
v. Cancer Research Soc'y, Inc., 694 F. Supp. 1051 (S.D.N.Y.
1988).  Indeed, this Court has noted that "although no explicit
legal theory supports the proposition, public service or benefit
entities appear to receive greater protection than for-profit
business organizations." Credit Counseling Ctrs. of Am., Inc. v.
Budget & Credit Counseling Servs., Inc., No. 97 Civ. 1368, 1997
WL 115645, at *3 n.2 (S.D.N.Y. Mar. 13, 1997).

    Since 2002, the Foundation has provided services under
the name "Alzheimer's Foundation" for individuals with
Alzheimer's disease and holds four trademarks related to its
name. (FAC ¶¶ 11-12, 17-18.)  The Foundation has functioned
under this name as a successful charity for nine years. (FAC ¶
11.)

    While a composite mark (consisting of both a word
element and a design element) must be considered in its
entirety, trademark law recognizes that the word portion is

often more likely to be impressed upon a purchaser's memory because it is the word that purchasers use to request the goods and/or services.  Therefore, the word portion is often accorded greater weight in determining the likelihood of confusion. See In re Dakin's Miniatures, Inc., 59 U.S.P.Q.2d 1593, 1595-96, 1999 WL 1043923, at *3 (T.T.A.B. Nov. 8, 1999); In re Appetito Provisions Co. Inc., 3 U.S.P.Q.2d 1553, 1554, 1987 WL 124293, at *1 (T.T.A.B. July 1, 1987); Amoco Oil Co. v. Amerco, Inc., 192 U.S.P.Q. 729, 735, 1976 WL 21160 (T.T.A.B. Oct. 18, 1976); United States Patent & Trademark Office, Trademark Manual of Examining Procedure § 1207.01(c)(ii) (6th ed., rev. 2, 2010).

A compelling reason for the enhanced judicial protection of a charity's trademarks is the public interest in ensuring their contributions to charitable organizations are received by the correct charity.  See Deborah Heart and Lung Ctr v. Children of the World Found., Ltd., 99 F. Supp. 2d 481, 494 (D.N.J. 2000) ("the public also has a right to know to whom they are giving their money and who is administering these services . . . . The consumers of these services should likewise know which organization is treating them and which is not").

To establish a claim for deceptive trade practices under New York General Business Law § 349, a plaintiff must

10

allege that "(1) the defendant's deceptive acts were directed at consumers; (2) the acts are misleading in a material way; and (3) the plaintiff has been injured as a result." Gucci Am. v. Duty Free Apparel, Ltd., 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) (internal citations omitted).

The Foundation has pled a claim for deceptive acts and practices. Donors are the consuming public for charitable fundraising activities and are deceived, when a check intended for one charity is cashed by another. "[T]he public . . . has a right to know for whom they are giving money and who is administering services. When donors choose to give money to support [a particular charity], they should be assured they are giving it to the [intended organization]." Deborah Heart, 99 F. Supp. 2d at 494.

A certificate of registration on the Principal Register is prima facie evidence of the validity of the mark and its registration, as well as the registrant's ownership and exclusive right to use the mark in commerce. 15 U.S.C. § 1057(b). Consequently, the Association's mark is presumptively entitled to protection against infringement.

11

The Foundation's reliance on Miss World v. Mrs.
America Pageants, Inc., 856 F.2d 1445 (9th Cir. 1988), abrogated
in part on other grounds as recognized in Eclipse Assocs. Ltd.
v. Data Gen. Corp., 894 F.2d 1114 (9th Cir. 1990), is misplaced.
Miss World was the appeal of a denial of a preliminary
injunction and did not apply the standard used to analyze Lanham
Act claims in this circuit, pursuant to Polaroid Corp. v.
Polaroid Elects. Corp., 287 F.2d 492 (2nd Cir. 1961), cert.
denied, 368 U.S. 820 (1961).   In addition, unlike the present
case, in Miss World the parties were not agreed that a
likelihood of confusion exists.  The Miss World court also
distinguished cases that protected "Miss U.S.A." from "Miss Nude
U.S.A.", "Little Miss U.S.A.", and "Miss Teen U.S.A." on the
basis that in Miss World, the defendant used a different marital
prefix and inserted connecting words.  Miss World, 856 F.2d at
1450.  The term "Alzheimer's Foundation" does not include any
connecting words to comparably distinguish itself from the
Association's mark.  Miss World does not warrant dismissal of
the Association's Amended Complaint.


Blinded Veterans Association v. Blinded American
Veterans Foundation, 872 F.2d 1035 (D.C. Cir 1989) is of no more
import than Miss World.  It is likewise from a different circuit
and was an appeal from an injunction entered after almost two

years of discovery.  BVA, unlike the present case, did not involve any registered marks and so the burdens in that case were different than those here.  The BVA court distinguished its case from those involving registered marks that are presumed non-generic. BVA, 872 F.2d at 1041. Here, unlike the marks in BVA, Alzhiemer's Association is a registered, incontestable mark and is entitled to a presumption of distinctiveness and to protection. 15 U.S.C. § 1057(b). Accordingly, BVA does not warrant dismissal of the Association's Amended Complaint, either.

The Association's mark is a word mark, not a composite word and design mark. Because it is incontestable and registered, the Association's mark is statutorily granted "the presumption of an exclusive right to use the mark . . . on the goods and services noted in the registration certificate." Savin Corp. v. Savin Group, 391 F.3d 439, 457 (2d Cir. 2004); see also 15 U.S.C. § 1065.  Therefore, the Association's right is assumed to extend to:

> Association services, namely promoting the interests of those with neuro-degenerative brain disease before the general public, political entities and health care and long term providers; promoting the interests of those concerned with the prevention, detection, treatment and elimination of neuro-degenerative brain disease

* * * * *

13

charitable fundraising

* * * * *

medical research

* * * * *

providing information and support groups pertaining to
neuro-degenerative brain disease and dissemination of
medical information.

(AAC, Exh. A.)  These are activities in which the Foundation

recognized it is involved. (FAC ¶ 12.) The AAC has suggested

that the Foundation is an infringer.


The FAC alleges, inter alia, misrepresentation, false

designation of origin, and unfair competition under the Lanham

Act, 15 U.S.C. § 1125(a) as well as trademark dilution under

N.Y. General Business Law § 360-1, requiring an allegation that

there exists "a likelihood of confusion in commerce, whereby

numerous ordinary prudent donors have been, and are likely to

be, misled into believing that the Association and the

Foundation are the same organization." (FAC ¶ 61.)


At the same time, the AAC alleges that (i) the

Association's mark has been used in commerce since 1988 (AAC ¶

14, Ex. A, 7/30/03 Response) and the Association advertises

nationally through its website (AAC ¶ 22)); (ii) in 2008, the

14

Association raised over $78,000,000 and had assets of over
$120,000,000 (AAC ¶ 21), millions of dollars have been
contributed to the Association, and the Association has
dedicated millions of dollars to an extensive array of program
services, outreach efforts, national hot-line services,
government advocacy efforts, research, and materials, under the
Association's mark, including national and international
conferences (AAC, Ex. A, 7/30/03 Response)); (iii) the
Association is the largest non-pharmaceutical private funder of
Alzheimer's research (AAC, Ex. A, 7/30/03 Response)); and (iv)
the Association's mark is federally registered on the Principal
Register and is incontestable (AAC, Ex. A, 7/30/03 Response).[1]

Since 2006, the law has required only a likelihood of
dilution. 15 U.S.C. § 1125(c)(l); see also Starbucks Corp. v.
Wolfe's Borough Coffee, Inc., 477 F.3d 765, 766 (2d Cir. 2007)
("Congress amended the FTDA in response to the Supreme Court's
decision in Mosely v. V Secret Catalogue, Inc., which had
construed the FTDA to require a showing of actual dilution as
opposed to a likelihood of dilution. The FTDA as amended
effective October 6, 2006, entitles the owner of a famous,

---

[1]     The AAC tracks the four non-exclusive factors that a court may consider
in determining the degree of fame of a mark under 15 U.S.C. § 1125(c)(2)(A):
(i) duration, extent, and geographic reach of advertising and publicity; (ii)
amount, volume, and geographic extent of sales of goods or services; (iii)
extent of actual recognition; and (iv) registration.

15

distinctive mark to an injunction against the user of a mark that is 'likely to cause dilution'").

When the correct law concerning pleadings and dilution is applied, the Association's dilution claims are well-pleaded. The Lanham Act claims are properly pleaded and injury to business reputation and dilution claims under New York General Business Law are also properly pleaded.

**The Association's Motion To Dismiss The Foundation's**
**UCC And Conversion Claims Is Granted**

The Foundation has alleged that the Association and Northern Trust "continued to act as the paying bank on such charitable donation checks, which endorsements were converted by Defendants, in violation of New York CLS UCC § 3-404" (FAC ¶ 89), based upon the deposit of the Harbaugh funds check and the Greebel, Leesment and Felmley, and S. and T. Horan checks.

Dismissal with respect to the Harbaugh checks on the basis of collateral estoppel is appropriate under Rule 12(b)(6). See Houbigant Inc. v. Development Specialists, Inc., 229 F. Supp.2d 208, 220 (S.D.N.Y. 2002) ("Rule 12(b)(6) dismissal . . . is appropriate when it is clear, from the complaint and from

16

matters of which the court takes judicial notice, that
plaintiff's claims are barred as a matter of law").  Federal
courts must give the same preclusive effect to a state court
decision as a state court would give to it.  17 U.S.C. § 1738;
see also Cowan v. Codelia, 149 F. Supp.2d 67, 73 (S.D.N.Y. 2001)
(citing Brooks v. Giuliani, 84 F.3d 1454, 1463 (2d Cir. 1996);
Schulz v. Williams, 44 F.3d 48, 53 (2d Cir.1994); Hennessy v.
Cement and Concrete Worker's Union Local 18A, 963 F. Supp. 334,
337-38 (S.D.N.Y. 1997)).


        The Court takes judicial notice of the record of the
Virginia state court action.  See Kramer v. Time Warner Inc.,
937 F.2d 767, 773-74 (2d Cir. 1991); Cowan, 149 F. Supp.2d at
70.  The Association received an initial payment of $36,410.03
in October 2005 from the Harbaugh Trust made "TO THE ORDER OF
Alzheimer's Foundation, 225 N. Michigan Ave – Ste. 1700,
Chicago, IL 60501-17_3."  (AAC ¶ 32.)  Receipt of this payment
was pleaded in the complaint in the Virginia state court action.
The Association filed the Virginia state court action in
December 2007, for breach of trust against the trustees of the
Harbaugh Trust since no further payments were made to the
Association, and the trustees had not responded to the
Association's request for information.  The trustees, on July 9,
2008, answered and asserted the affirmative defenses of unclean

17

hands, waiver and estoppel, failure to state a claim upon which relief could be granted, laches, setoff and recoupment, mistake, fraud, and running of the statute of limitations.  They also asserted counterclaims for recoupment and conversion concerning the Harbaugh Trust assets.  The trustees, on July 10, 2008, served the Foundation with a third party complaint for indemnification, as the trustees had sent the remainder of the bequest to the Foundation.  The Foundation on December 9, 2008, answered and asserted the affirmative defenses that it accepted an unsolicited gift and had no obligation to the trustees and that the trustees had failed to state a claim upon which relief could be granted.  The trustees, on July 7, 2009, answered the amended complaint, asserting the same affirmative defenses.  The Foundation served discovery requests on the Association in the Virginia state court action, and the Association responded.  The trustees moved to strike the Association's case-in-chief, and the Association moved to strike the trustees' counterclaim.  A hearing was held on December 8, 2009, by the Honorable Bruce D. White in the Circuit Court of Fairfax Virginia.  It was:

> ADJUDGED, ORDERED, and DECREED as follows:
> Defendant Trustees' Motion to Strike Plaintiff's case
> in chief is granted for the reasons stated from the
> bench, and counterclaim defendant's motion to strike
> counterclaims is granted for the reasons stated from
> the bench; all claims for attorneys fees are denied;
> Third Party Complaint is deemed moot.

(AAC, Ex. C.)

18

Under Virginia law, a party invoking collateral estoppel must prove the following five elements:  (1) the parties to the two proceedings must be the same or in privity; (2) the prior proceeding must have resulted in a valid and final judgment against the party against whom preclusion is sought or his privy; (3) the factual issue to be precluded must have been actually litigated in the prior proceeding; (4) the factual issue to be precluded must have been essential to the judgment in the prior proceeding; and (5) there must be mutuality, "that is, a party is generally prevented from invoking the preclusive force of a judgment unless that party would have been bound had the prior litigation of the issue reached the opposite result." TransDulles Center, Inc. v. Sharma, 252 Va. 20, 22-23, 472 S.E.2d 274, 275 (1996) (citing Norfolk & Western Ry. v. Bailey Lumber Co., 221 Va. 638, 640 (1980)).

The Association and the Foundation were parties to the Virginia state court action.  There was a valid and final judgment against the trustees and the Association.  That court examined the facts, held a hearing, and dismissed everyone's claims.  Collateral estoppel applies even if the Foundation "did not bring any claims against the Association to recover trust assets in the Virginia state court action and the Association

19

did not file any claims against the Foundation," and even if no party in the Virginia action "litigate[d] claims against Northern Trust." (Mem. of Law in Opp'n to Def. Northern Trust's Mot. to Dismiss Pl.'s Am. Compl. 6.)  The Foundation has contended that collateral estoppel should not apply because the claim against it in Virginia was dismissed as moot. (Id. at 9.) The dismissal might affect res judicata, but it is irrelevant to collateral estoppel.  See Hell's Kitchen Neighborhood Ass'n v. Bloomberg, No. 05 Civ. 4806, 2007 WL 3254393, at *4 (S.D.N.Y. Nov. 1, 2007) ("dismissal of an action for mootness 'is not a final determination on the merits, and therefore, should not be accorded res judicata effect beyond the question decided therein.'") (citations omitted).

The Virginia court decided that the $36,410.03 Harbaugh check belonged to the Association and dismissed the Association's claim that the Harbaugh trustees acted improperly and dismissed as moot the trustees' claim for indemnification against the Foundation.  The proper ownership of the funds was not dismissed as moot; it was a key issue that was finally determined in the prior action.  Furthermore, there is no requirement that the claim in the third-party complaint and the present complaint must be identical.  Rather, it is only necessary that the issue for which collateral estoppel is being

invoked is the same in the two proceedings. See TransDulles,
252 Va. at 22-23, 472 S.E.2d at 275; Ward v. Harte, 794 F. Supp.
109, 112 (S.D.N.Y. 1992). Here, the Virginia and present
actions involve the identical issue: who owned the funds
represented by the Harbaugh Trust check. Accordingly, the
Counts relating to the Harbaugh check are precluded by
collateral estoppel.

The Association did not violate the U.C.C. with
respect to the remaining checks or convert them because Greebel,
Leesment, Felmly, and S. and T. Horan never intended for the
Association to have an interest in those checks. Greebel is an
executive assistant at the Foundation's New York offices;
Leesment is its Director of Development; Felmly is Leesment's
husband; S. Horan is the Foundation's Vice President of Business
and Finance and H. Horan is S. Horan's husband; each check was
mailed to the Association's main office or to one of its lock
boxes. When a drawer or maker of a check signs an instrument
such as a check with no intention for the payee to have an
interest in that check, the check is a bearer check. N.Y. CLS
U.C.C. § 3-405(1)(c); Kersner v. First Fed. Sav. and Loan Ass'n
of Rochester, 264 A.D.2d 711, 713, 695 N.Y.S.2d 369, 371 (2d
Dep't 1999) ("the 'fictitious payee' rules creates an exception
to the general principle that a drawer is not liable on a forged

21

instrument 'in situations where the drawer is the party best able to prevent the loss'") (citations omitted); Insurance Co. of State of Pa. v. Citibank (Delaware), 145 A.D.2d 218, 223, 537 N.Y.S.2d 519, 522 (1st Dep't 1989); Phoenix Die Casting Co. v. Mfrs. and Traders Trust Co., 29 A.D.2d 467, 469, 289 N.Y.S.2d 254, (4th Dep't 1968) ("we have a check payable to an existing person not intended to have any interest in it which makes the instrument bearer paper") (citing U.S. v. Chase Nat'l Bank, 250 F. 105 (2d Cir. 1918); Trust Co. of Am. v. Hamilton Bank, 127 A.D. 515, 112 N.Y.S. 84 (1st Dep't 1908)).

The Foundation has challenged the U.C.C., conversion and conspiracy claims by attacking the Association's application of the fictitious payee rule. However "[n]othing in UCC 3-405 limits the protection of the fictitious payee rule to banks. Comment 4 to UCC 3-405 indicates that the rule was intended to protect all holders of negotiable instruments. . . ." Getty Petroleum Corp. v. American Express Travel Related Servs. Co., Inc., 90 N.Y.2d 322, 328 (N.Y. 1997). "Equally significant is that the Code its elf does not distinguish between bank and non-bank holders." Id. The checks were intentionally addressed and delivered to the Association, the donors obviously intended for the Association to accept and deposit the checks.

**The Motions To Dismiss The Unjust Enrichment Claims Are Granted**

To establish a claim for unjust enrichment, a plaintiff must allege (1) the defendant benefitted, (2) at the plaintiff's expense, and (3) that equity and good conscience require restitution. Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000). There are no sufficient allegations describing that the parties lost donors as a direct result of the alleged wrongful activity of the other. The motions to dismiss the unjust enrichment claims are therefore granted.

**The Motion To Dismiss The Trade Libel Claim Is Granted**

In order to state a claim for libel, a plaintiff must properly allege (1) false and defamatory statement of fact; (2) regarding the plaintiff; (3) which is published to a third party; and (4) which results in injury to the plaintiff. Penn Warranty Corp. v. DiGiovanni, 810 N.Y.S.2d 807, 813-14 (N.Y. Sup. Ct. 2005) (citing Idema v. Wager, 120 F.Supp.2d 361 (S.D.N.Y. 2000); Ives v. Guilford Mills, 3 F.Supp.2d 191 (N.D.N.Y. 1998)).

In the July 19th Letter, the Foundation reported its investigation and advised the Foundation's donors of the

23

existence of the lawsuit and Association's actions.  It is
common for parties to commercial litigation to release
statements to the press and such statements are non-actionable
statements of opinion as to the probably outcome of the
litigation.  See 5 J. Thomas McCarthy, McCarthy on Trademarks &
Unfair Competition § 27:109.50 (4th ed. 2009) (public statements
"emphasizing the strength" of a party's litigation position are
generally considered inactionable "opinion about the probable
outcome of the litigation"); L-7 Designs, Inc. v. Old Navy, LLC,
No. 09 Civ. 1432, 2010 WL 157494, at *11 (S.D.N.Y. 2010) ("'The
fact that a statement relates to the strength of one's position
in litigation, and is made to persons who know of the
litigation, militates strongly in favor of a finding that it was
opinion'") (quoting Lewis Mgmt. Co. v. Corel Corp., No. 94-1903,
1995 WL 724835 (S.D. Cal. Jun. 28, 1995)); In re Polk's Model
Craft Hobbies, Inc., No. 92-23178, 1995 WL 908275 at *25 (Bankr.
D.N.J. Dec. 28, 1995) (press release which implied that
plaintiff was making "knock offs" and that those who make such
products "rip off consumers" was statement of opinion).

        Similarly, a statement condemning an opponent's legal
claims as "baseless" is mere opinion and is not defamatory.
Gotbetter v. Dow Jones & Co., 259 A.D.2d 335, 687 N.Y.S.2d 43
(1st Dep't 1999) (attorney's statement calling plaintiff's

24

lawsuit against his client "baseless" was merely an opinion was not actionable) (citation omitted); Scholastic, Inc. v. Stouffer, 124 F. Supp.2d 836 (S.D.N.Y. 2000) (statement that opponent's legal claims were "absurd," ridiculous" and "meritless" and that opponent was a "golddigger" were inactionable statements of opinion).

In addition, in New York, a fair and accurate report of a judicial proceeding is privilege from liability for defamation.  "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." N.Y. Civ. Rights Law § 74.  The July 19th Letter not only reflected the results of its pretextual investigation, but also included the factual statement that the Association's Chief Operating Officer admitted under oath in the public Virginia State Action that the Association will deposit any check that has "Alzheimer" as part of the payee name.

As such, the motion to dismiss the libel claim is granted.

25

**The Motion To Dismiss The Association's Fraud Claim Is Granted**

To establish fraud, a plaintiff must establish "'a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff.'"  May Dep't Stores Co. v. Int'l Leasing Corp., Inc., 1 F.3d 138, 141 (2d Cir. 1993) (quoting Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970-71 (2d Cir. 1987)).

The Association has based the majority of its allegations regarding fraud "upon information and belief." Generally, allegations of fraud generally cannot be based upon plaintiff's information and belief.  Watts v. Jackson Hewitt Tax Service Inc., 579 F. Supp.2d 334, 351 (E.D.N.Y. 2008) (citing Segal v. Gordon, 467 F.2d 602, 608 (2d Cir. 1972)).  While this pleading restriction may be relaxed where the matter is peculiarly within the knowledge of the defendant, in such a case the allegations must be accompanied by a statement of facts upon which the belief is founded.  Stern v. Leucadia Nat'l Corp., 844 F.2d 997, 1003 (2d Cir. 1988); DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2d Cir. 1987); Segal, 467 F.2d at 608; Druyan v. Jagger, 508 F.Supp.2d 228, 242 (S.D.N.Y. 2007). See also Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990). Neither is the case here.

26

The investigation does not in itself constitute fraud. See Apple Corps. Ltd. v. Int'l Collectors Soc'y, 15 F. Supp. 2d 456, 475 (D.N.J. 1998) (accepting attorneys' use of undercover investigators to detect ongoing violations of the law as not ethically proscribed); see also Sega Enters. Ltd. v. MAPHIA, 857 F. Supp. 679, 689 (N.D. Cal. 1994) ("the fact that a plaintiff's employee, in the course of investigating a copyright or trademark infringement, fails to identify herself as such to the defendant does not provide a defense to the infringement when such identification would have defeated the investigation"). The provision of checks to the Association determines the extent of trademark infringement and use of funds by the Association. It is not alleged that the Association reasonably relied on any statement made by each Defendant, as the checks at issue were designated as intended for the Foundation.  No allegation of damage resulting from the alleged fraud has been set forth. Accordingly, the motion to dismiss the Association's fraud claim is granted.

**The Motion To Dismiss Against the Trust Is Granted**

The Trust is not referred to in the FAC except in Count VII for purported violation of U.C.C. § 3-404.  However,

27

the Foundation has referred each of its other counts to
"Defendants," in the plural.  For clarity, Counts I-VI, VIII and
IX as against the Trust are dismissed for failure to state a
claim.

As for Count VII, it is devoid of any factual
predicate for the alleged wrongful payment of any checks by the
Trust.  Moreover, Count VII itself does not provide a single
factual allegation of Trust action upon which culpability could
be placed upon the Trust.  Indeed, but for the single check that
was the subject of the Virginia litigation described above, no
other mishandled checks are identified in the complaint.  The
motion to dismiss against the Trust is therefore granted.

## Conclusion

Based upon the conclusions set forth above, the
motions to dismiss the Lanham Act claims and related claims are
denied, the motion to dismiss the U.C.C., conversion libel are
unjust enrichment claims are granted, and the motion to dismiss
the Trust is granted.  Leave to amend within 20 days is granted.

The parties are directed to meet and confer on a schedule for further pleading, discovery and consolidation.

It is so ordered.

New York, NY
May 2 4, 2011

_____
ROBERT W. SWEET
U.S.D.J.